UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

IVAN BLACK #497061,

    *Plaintiff*,                                   CASE NO. 14-CV-11038-MOB-PTM

v.                                        DISTRICT JUDGE MARIANNE BATTANI
                                              MAGISTRATE JUDGE PATRICIA MORRIS

MICHIGAN DEPARTMENT OF CORRECTIONS,
SAGINAW CORRECTIONAL FACILITY,
JESSE LOPEZ, and SUSAN MCCAULEY,

    *Defendants*.
_____/

## REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION TO DISMISS
(Doc. 24)

**I.    RECOMMENDATION**

For the following reasons, **IT IS RECOMMENDED** that Defendants' Motion to Dismiss (Doc. 24) be **GRANTED.**

**II.    REPORT**

    **A.    Introduction**

On March 10, 2014, Plaintiff Ivan Black filed a *pro se* prisoner civil rights complaint pursuant to 42 U.S.C. § 1983. (Doc. 1.) Plaintiff did not properly identify Defendants in his Complaint and on March 13, 2014, Magistrate Judge R. Steven Whalen ordered him to correct this deficiency. (Doc. 3.) On March 21, 2014 Plaintiff responded to the order by properly identifying Defendants Lopez and McCauley. (Doc. 5.) On April 10, 2014, Judge Whalen granted Plaintiff's application to proceed without prepayment of fees (Doc. 6.) Judge Whalen also directed the U.S. Marshal Service to serve the Complaint on all defendants. (*Id.*) By order

of U.S. District Judge Marianne O. Battani, this case was referred to the undersigned magistrate judge on May 9, 2014. (Doc. 16.)

On July 10, 2014, all of the Defendants filed this motion to dismiss. (Doc. 24.) On July 14, 2014, Plaintiff was notified that a motion to dismiss had been filed and that his response was to be filed on or before August 11, 2014. (Doc. 25.) That date has passed and no response has been filed. Therefore, the motion is ready for report and recommendation without oral argument pursuant to Local Rule 7.1(f)(2) of the Eastern District of Michigan.

**B.     Standard of Review**

Rule 8(a) sets forth the basic federal pleading requirement that a complaint "shall contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). "Rule 8 requires only that the complaint give the defendant fair notice of the claim and its supporting facts." *E.E.O.C. v. J.H. Routh Packing Co.*, 246 F.3d 850, 854 (6th Cir. 2001). Despite this relatively low threshold, a complaint must nevertheless contain more than legal labels, conclusions, and a recitation of the elements of a cause of action; it must also contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 547 (2007). "The court must construe the complaint in the light most favorable to the plaintiff, accept all the factual allegations as true, and determine whether the plaintiff can prove a set of facts in support of its claims that would entitle it to relief." *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 360 (6th Cir. 2001). Even though a complaint need not contain "detailed" factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level on the

assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (citations omitted).

"In determining whether to grant a Rule 12(b)(6) motion, the court primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account." *Nieman v. NLO, Inc.*, 108 F.3d 1546, 1554 (6th Cir. 1997) (quotation omitted). When a plaintiff is proceeding without the assistance of counsel, the court is required to liberally construe the complaint and hold it to a less stringent standard than a similar pleading drafted by an attorney. *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Hahn v. Star Bank*, 190 F.3d 708, 715 (6th Cir. 1999). However, even *pro se* complaints must satisfy basic pleading requirements. *Wells v. Brown,* 891 F.2d 591, 594 (6th Cir. 1989).

### C. Background

Plaintiff claims that while an inmate at the Michigan Department of Corrections ("MDOC") he was under a diagnosis of gender identity disorder ("GID"), that he had already received years of hormone therapy treatment before his arrest, and that he had an "A-cup breast" when he was arrested. (Doc. 1 at 3.) According to Plaintiff, "Before prison I said you know what I'm ready to go all the way and I did what it took to get hormon[e]s legally." (Doc. 1 at 6.) He also said he was "very fem," that he was taking Premarin 2.5 before prison, and that he had been dressing as a women since he was sixteen. (*Id.*)

Plaintiff references MDOC's policy directive 04.06.184 which reads, in relevant part that,

> To be diagnosed with a gender identity disorder, there must be evidence of a
> strong and persistent cross-gender identification (i.e., the desire to be, or the

3

> insistence that one is, of the other sex) and evidence of persistent discomfort about one's assigned sex or a sense of inappropriateness in the gender role of that sex.
>
> . . .
>
> If the medical/mental health evaluations support a diagnosis of gender identity disorder, the medical provider shall formulate an individual management plan.
> . . .
>
> Hormonal treatment of a prisoner with a gender identity disorder may be undertaken only if approved by the Chief Medical Officer and only if one or more of the following apply: (1) The prisoner was, immediately prior to incarceration, scheduled for sex reassignment surgery at a recognized university affiliated gender identity disorder clinic (as documented by receipt of definitive records) and was receiving hormonal treatment under that clinic's supervision; (2) The prisoner has been surgically castrated (confirmed anatomically or, in biological females, by receipt of definitive records); (3) The prisoner had a valid prescription prior to incarceration for hormonal treatment; (4) Other circumstances as approved by the Chief Medical Officer.

MDOC Policy Directive 04.06.184 (eff. Dec. 20, 2010), available at http://www.michigan.gov/documents/corrections/0406184_340784_7.pdf. Plaintiff claims that there were enough medical records "for them to allow [sic] to go on with my wishes to be a transgender and go forth and become a legal woman" (Doc. 1 at 3.)

Plaintiff states that he is "depressed, etc. and [b]la[]m[es] it all on the MDOC." (Doc. 1 at 3.) He says that he was incarcerated for five years and ten months and during that time he was lied to, that the MDOC "slowed down my process [of becoming a woman]" despite meeting the requirements of the policy, and they therefore failed to follow their own policy. (*Id.*) He also alleges that "the[y] did not give me my medicine because of [the] paper[]work and problems that could cause to my [h]ealth . . . ." (Doc. 1 at 6.) Plaintiff also states that he was "given detail by [policy directive] 04.06.184." (Doc. 1 at 5.)

4

    **D.**    **Analysis**

    **1.**    **Claims Against MDOC and Saginaw Correctional Facility**

Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts if the state has not waived immunity and Congress has not expressly abrogated Eleventh Amendment immunity by statute. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1993). Since Congress has not abrogated Eleventh Amendment immunity by statute, nor did it do so under section 1983, *see Hutzell v. Sayre*, 5 F.3d 996, 999 (6th Cir. 1993), and since the state of Michigan has not consented to suit, *Johnson v. Unknown Dellatifa*, 357 F.3d 539, 545 (6th Cir. 2004), I suggest that the claims against the MDOC be dismissed. In addition, since the Saginaw Correctional Facility is an entity within the purview of the MDOC, it too should be dismissed. *Jones v. Barnhart*, No. 10-12114, 2013 WL 4502677, at *4 (E.D. Mich. Aug. 22, 2013)(entities within the MDOC are also entitled to 11th Amendment immunity).

    **2.**    **Claims Against Jesse Lopez and Susan McCauley**

A civil rights action under 42 U.S.C. § 1983 consists of two elements:  (1) the defendant acted under color of state law; and (2) the offending conduct deprived the plaintiff of rights secured by federal law. *Bloch v. Ribar*, 156 F.3d 673, 677 (6th Cir. 1998) (citing *Parratt v. Taylor*, 451 U.S. 527, 535 (1981)). "If a plaintiff fails to make a showing on any essential element of a § 1983 claim, it must fail." *Redding v. St. Eward*, 241 F.3d 530, 532 (6th Cir. 2001). Additionally, to state a civil rights claim, a plaintiff must allege that he or she suffered a specific injury as a result of the conduct of a particular defendant and an affirmative link exists

between the injury and the conduct of that defendant. *Rizzo v. Goode*, 423 U.S. 362, 371-72 (1976).

Defendants Jesse Lopez and Susan McCauley have raised the defense of qualified immunity. The qualified immunity analysis involves three inquiries.

> (i) "whether, based upon the applicable law, the facts viewed in the light most favorable to the plaintiffs show that a constitutional violation has occurred";
> (ii) "whether the violation involved a clearly established constitutional right of which a reasonable person would have known"; and (iii) "whether the plaintiff has offered sufficient evidence to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights."

*Radvansky v City of Olmsted*, 395 F.3d 291, 302 (6th Cir. 2005) (quoting *Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir. 2003)). Courts are no longer required to address these inquiries sequentially; instead a court may use its sound discretion to determine which of the prongs of the qualified immunity analysis should be considered first. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

Although qualified immunity is often raised in a motion for summary judgment rather than a motion to dismiss, it may be considered via a motion to dismiss. Using the motion to dismiss standards, the court must assume all Plaintiff's allegations are true and determine whether, as averred, any constitutional violation occurred. *Faith Baptist Church v. Waterford Twp.*, 522 F. App'x 322, 325 (6th Cir. 2013); *Cockrell v. City of Cincinnati*, 468 F. App'x 491, 494 (6th Cir. 2012). Once the defense of qualified immunity is raised, the burden rests with the plaintiff to show that the defendant is not entitled to qualified immunity. *Robertson v. Lucas*, 753 F.3d 606, 615 (6th Cir. 2014).

In this case, I suggest Plaintiff has failed to show a constitutional violation, therefore the second prong–whether that right was clearly established–need not be addressed. The "deliberate indifference to serious medical needs of prisoners" violates the Eighth Amendment Cruel and Unusual Punishment Clause. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). The inquiry incorporates objective and subjective elements into a two-pronged standard. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). The objective inquiry is whether the deprivation was "sufficiently serious" and the subjective prong considers whether the state of mind of the official was sufficiently culpable. *Id.*

Defendants argue that Plaintiff's failure to name Defendants in the body of the complaint requires dismissal. As indicated earlier, after filing the complaint, Plaintiff was ordered to name the John Doe Defendants and he named the Defendants. Therefore, the deficiency has been corrected and, I suggest, his failure to specifically amend the complaint to name the now named Defendants should not be used against him. I therefore turn to the substantive analysis.

The Sixth Circuit has found "transsexualism is a serious medical need for purposes of the Eighth Amendment." *Phillips v. Michigan Department of Corrections*, 731 F. Supp. 792, 800 (W.D. Mich. 1990), *affirmed*, 932 F.2d 969, 969 (6th Cir. 1991). However, "the failure to provide hormones to a transsexual inmate is not, in and of itself, an Eighth Amendment violation." *Rowe v. Corr. Med. Servs., Inc.*, No. 1:08-CV-827, 2010 WL 3779561, at *6 (W.D. Mich. Aug. 18, 2010) *report and recommendation adopted*, No 1:08-CV-827, 2010 WL 3779437 (W.D. Mich. Sept. 22, 2010).

Here, Plaintiff alleges that he "had years of hormonal treatment" and that "[a]t the time of my arrest I did have an A cup breast" but that despite having "enough hospital records, [and] Wayne County jail records" for Defendants to continue his hormone treatment, Defendants refused to provide any hormone treatment. (Doc. 1 at 3, 5.) Where a plaintiff has received hormone treatments up until the time of incarceration and those treatments are terminated upon entry into prison, courts have recognized a viable Eighth Amendment claim. *Phillips v. Mich. Dep't of Corrections,* 731 F. Supp. 792, 800-01 (W.D. Mich. 1990); *South v. Gomez*, No. 99-15976, 2000 WL 222611 (9th Cir. Feb. 25, 2000). However, according to Plaintiff's own allegations, he was incarcerated for 5 years and 10 months (Doc. 1 at 3.) Therefore, any termination of his hormone therapy upon entering the prison system would have occurred well beyond the three-year limitation period for a § 1983 claim and thus, is not viable. *Spisak v. Wilkinson*, No. 1:01-CV-136, 2001 WL 36178103 (N.D. Ohio Apr. 27, 2001) (distinguishing the case from *Phillips* and dismissing Eighth Amendment claim based on statute of limitations where hormone therapy had been terminated upon entry into prison but prisoner had entered prison years before expiration of the limitation period of two years); *Harrison v. Michigan*, 722 F.3d 768, 772 (6th Cir. 2013)(noting that the limitation period for § 1983 claims in Michigan is three years).

### E.   Conclusion

For the reasons stated above, I recommend that Defendant's Motion to Dismiss (Doc. 24) be granted.

### III.   REVIEW

Rule 72(b)(2) of the Federal Rules of Civil Procedure states that "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 155; *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). According to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  November 25, 2014                    /S PATRICIA T. MORRIS
                                            Patricia T. Morris
                                            United States Magistrate Judge